Spear, J.
The errors complained of relate to the charge of the court to the jury.
It appeared by the evidence that the horses were killed by the train of the company, in daylight, on its track opposite the lands of the plaintiff. The railroad was fenced with a good fence on both sides, with cattle guards at the road crossings, and it was not on account of any defect in the fence that the animals got upon the right of way. The fence had been built and maintained by the plaintiff under a written contract with the company by which it was agreed that the company should furnish all the material for the fence, and that the plaintiff, in consideration that he might put in two gates, one on each side of the road, opposite a farm crossing, thus giving him communication between his fields, and might set the fences in ten feet on each side of the right of way, agreed to and did build the fences and the gates, and, up to the time of tbe injury maintained them. No one but the plaintiff had the right to use the gates, although occasionally some neighbors did use 'them. One of the horses was breachy *157 and was with the others turned out with a yoke on the evening- before the injury into plaintiff’s pasture field along side the railroad, from which one of the gates opened to the right of way. The horses got on the right of way through this gate which was found open on the morning when the horses were run over. The fence had not been disturbed. 'No one knew how the gate became open. The testimony of plaintiff was that he noticed the gate the evening'before the injury, audit was shut. He supposed some of his family were through the gate last.
The track near the gate ran through a cut some eight or ten feet deep on the part from which the train approached the horses.
Evidence was offered by the plaintiff to show that the engineer and fireman might have seen the horses on the track for a mile before reaching them, and by the defendant to show that the horses were not seen by the engineer or fireman until the train was so close on to them as to make it impossible to stop the train before running over them.
Upon .these facts the court, among other things, charged the jury that:
“The plaintiff further offers evidence tending to show that the engineer and fireman who were on this locomotive had the means of and could have seen, for the distance of a mile or more,' the horses, and evidence is offered tending to show that, being able so to see them they did not stop as it was their duty to do. ’ ’
The court also charged the jury:
“If you find from the evidence that these animals could have been seen by the operators of the train, and they did not when they could have seen *158 them do everything in their power to stop their train and thereby prevent a collision which caused the death of these animals, your verdict will be for the plaintiff for the value of these animals killed.”
To which last instruction the company, by counsel, excepted.
We think, as to this instruction, the court misconceived the law. The evidence having established that the company had performed its full duty as between itself and the plaintiffs, as to the fencing of its road, and was in no way in fault for the condition of the gate which made it possible for the horses to get upon the right of way, and thence upon the track, it owed no greater duty in respect to the protection of the stock, giving the facts the construction most favorable to plaintiff, than was embraced in the exercise of ordinary care.. It could not be said, as matter of law, that the engineer was bound to stop the train. The company had the right to the free and unobstructed use of its track, and the paramount duty of the engineer was the protection of the persons and property on the train, and the train itself. Whether or not it was his duty to stop the train depended upon all the circumstances, and was a question to be submitted to the jury under proper instructions, and, in any event, even if plaintiff himself did not contribute to the accident the engineer was not bound to do everything in his power to stop the train, but was bound only to the use of ordinary care to avoid injury to the stock. It is not difficult to conceive of circumstances where a train and its passengers, crew and freight would be endangered by an attempt to stop. Ordinary care is the rule in such case, and that is to be exercised in away consistent with the paramount duty referred to.
*159 It is stated in the opinion of White, J. in Railroad Co. v. Smith, 22 Ohio St., 246: “If the servants of the company, in charge of the train, having due regard to their duties for the safety of the persons and property in their charge, could, by the exercise of ordinary care, have seen and saved the horses, we think they were bound to do so. ” This is the doctrine of the above case. But it rests upon the further qualification that the plaintiff himself was free from contributory negligence, as shown by the second paragraph of the syllabus.
But the case at bar is not, in its facts, precisely like the case above cited. A fair inference from the facts appearing by the plaintiff’s evidence, is that, by virtue of his contract with the company, he was bound to maintain the gate, i. e., prevent a gap at that point whereby cattle could get upon the track. That duty he did not perform, and by this neglect the horses strayed where they endangered the lives of the crew and the property of the compan3T, and were themselves injured. The plaintiff, therefore, contributed to his own loss by his violation of contract with the party whom he now demands shall make his loss good.
It was held in Railway Co. v. Smith, 26 Ohio St., 124, that ‘Where the owner of land through which a railroad runs, agrees with the railroad company, for a valuable consideration, to build and keep up good and sufficient fences on both sides of the road through his lands, and fails to do so, and on account of the insufficiency of such fences his animals stra3r upon the track and are injured, he is not entitled to recover for suchinjury, although the insufficiency of the fences was caused by casualty and without negligence on his part, unless such injury is shown to have been intentional, or the result of gross *160 carelessness on the part of-the agents and servants of the company.”
. Applying the law of this case to the case at bar the instruction should have been that, in order to recover, the plaintiff must establish that the injury was intentional on the part of those operating the train, or was the result of their gross carelessness.
Exceptions to the refusal of the court to give two instructions requested by the company’s counsel, are not passed upon, for the reason that the form in which they are printed renders their meaning obscure.
The charge, as printed, was,, we think, misleading, but that is not here made ground for reversal.
Judgment reversed and cause remanded.